IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEWEL WARNER,

        Plaintiff,

v.                                                     CIV 14-1123 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and

Remand for a Rehearing, with Supporting Memorandum (*Doc. 18*), filed July 20, 2015.

Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties

have consented to have me serve as the presiding judge and enter final judgment.

*Doc. 8*. Having reviewed the parties' submissions, the relevant law, and the relevant

portions of the Administrative Record, the Court finds that Plaintiff's motion is well-taken

and will be granted.

## I.    Procedural History

On August 2, 2010,[1] Plaintiff filed applications with the Social Security

Administration for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Title II and XVI of the Social Security Act, with an alleged onset of

disability beginning August 31, 2009, from memory loss, possible bipolar disorder,

---

[1] While both Plaintiff and the Commissioner indicate in their briefs that Plaintiff filed her applications on March 11, 2010, *see Doc. 18* at 3 and *Doc. 23* at 1, the Court's review of the record suggests that these applications were filed on August 2, 2010, *see AR* at 158-65. This apparent inconsistency is of no consequence to the Court's resolution of the issues herein but should be resolved on remand.

PTSD, anxiety, and depression. *AR* at 158-165, 206.[2] The agency denied Plaintiff's claims initially and upon reconsideration, and Plaintiff requested a hearing. *Id.* at 85-98, 108.

After a *de novo* hearing, Administrative Law Judge Barbara Licha Perkins ("the ALJ") issued an unfavorable decision on July 25, 2013. *Id.* at 28. She determined that if Plaintiff stopped using substances of abuse, there would be a significant number of jobs in the national economy that she could perform and that she was therefore not disabled. *Id.* Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on October 15, 2014. *Id.* at 1-6.  As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

Here, at Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 19. At Step Two, she determined that Plaintiff had the severe impairments of marijuana dependence, cocaine abuse, alcohol abuse, cognitive disorder not otherwise

---

[2] Documents 12-1 through 12-20 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

specified, mood disorder (alternately diagnosed as bipolar disorder and mood disorder not otherwise specified), and borderline personality traits. *Id.* at 20. At Step Three, she concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *Id.* at 21-22. At Step Four, she assessed Plaintiff's residual functional capacity ("RFC"), finding an RFC that allowed Plaintiff to perform a full range of work at all exertional levels but with a non-exertional limitation for understanding, remembering and carrying out only simple instructions and tasks and the requirement that she be able to set her work schedule on a day-to-day basis. *Id.* at 22. Next, at Step Five, the ALJ determined that considering all of her impairments, including her substance use disorders, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id.* at 24.

Because Plaintiff's case involved substance abuse, the ALJ also performed a drug addiction and alcoholism ("DAA") evaluation. As part of that evaluation, she assessed Plaintiff's non-DAA RFC – that is, an RFC assuming no drug or alcohol abuse. *Id.* at 25. She found that Plaintiff's non-DAA RFC allowed her to perform a full range of work at all exertional levels but with a non-exertional limitation for understanding, remembering and carrying out only simple job tasks. *Id.* In other words, the non-DAA RFC omitted one component from the initial RFC: the requirement that Plaintiff be able to set her work schedule on a day-to-day basis. *See id.* Although the ALJ found that Plaintiff would continue to be unable to perform past relevant work, she concluded that there were a significant number of jobs in the national economy that she could perform. *Id.* at 27. Finding that Plaintiff's ongoing substance abuse was a contributing factor material to the disability determination, and that Plaintiff would not be

disabled if she abstained from the use of drugs and alcohol, the ALJ concluded that Plaintiff was not disabled. *Id.* at 28.

## II.   Legal Standard

The general inquiry is whether the ALJ applied the correct legal standards and whether her decision is supported by substantial evidence. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012). A deficiency in either area is grounds for remand. *Id.* Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence, substituting its own discretion for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.   Analysis

### A.  Dr. Padilla's Opinion

On October 18, 2010, Disability Determination Services referred Plaintiff to Eligio Padilla, Ph.D., who performed a psychological consultative evaluation, including the administration of various tests for cognitive abilities.  During the evaluation, Plaintiff told Dr. Padilla that she smoked marijuana almost daily for the past decade and used cocaine when it was available.  *AR* at 333. She also explained that she used alcohol occasionally, drinking to excess. *Id.* She reported that she was typically depressed and wished "God would take [her]", but that, at other times, her mood was elevated, her mind raced, and she engaged in irresponsible and risky behavior. *Id.* She also admitted to self-mutilation during times of significant stress. *Id.*

Dr. Padilla noted that Plaintiff's attention, concentration and memory appeared "grossly impaired." *Id.* at 334. He explained that her thinking seemed "unfocused" and that most of her executive functions "seemed to be impaired to varying degrees." *Id.* After administering the WAIS-IV, Dr. Padilla noted that Plaintiff's Full Scale IQ was in the "extremely low range" at 69. *Id.* at 334-35. He also concluded, based upon her WAIS-IV results, that her ability to sustain attention, concentrate, and exert mental control was in the "extremely low range." *Id.* at 336.

Based on a variety of factors, including Plaintiff's extremely low cognitive functioning, her substance abuse and dependence, and her history of mood disorder and unsuccessful psychiatric treatment, Dr. Padilla opined that Plaintiff's prognosis was "guarded at best and  . . . more likely poor." *Id.* at 336.  He predicted that Plaintiff would continue to "have major difficulties in any competitive work setting" even if she were to abstain from all substance abuse "because of her extremely low Full Scale IQ, her very low General Ability Index, her extremely low Working Memory Index, and her very low Verbal Comprehension and processing Speed indices and her mood disorder." *Id.* at 338.

While ALJs are not bound by the findings of a State agency psychologist, they "may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6P, 1996 WL 374180 (1996). Indeed, the ALJ must give good reasons that are "sufficiently specific to make clear to any subsequent reviewers" for the weight assigned to physicians or psychologists. *See Langley v. Barnhart*, 373 1116, 1121 (10th Cir. 2004).

Plaintiff argues that the ALJ failed to give sufficiently clear and specific reasons for giving "little weight" to Dr. Padilla's opinion regarding Plaintiff's functioning without drug and alcohol use.  Moreover, she asserts that in rejecting this portion of Dr. Padilla's opinion, the ALJ "overstep[ped] her bounds into the province of medicine." *Doc. 18* at 18. The Commissioner maintains that the ALJ provided a detailed explanation of the reasons that she rejected this portion of Dr. Padilla's opinion, satisfying the standard that she provide specific and legitimate reasons for doing so. *Doc. 23* at 10-11.

According to Social Security Ruling ("SSR") 96-6p, the opinions of State agency psychologists who do not have a treatment relationship with the claimant "are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." SSR 96-6P, 1996 WL 374180.  SSR 96-6p further provides:

> The opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by the evidence in the case record, considering such factors as the supportability of the opinion in the evidence . . . , the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program or psychologist.

*Id*.  Additionally, ALJs are instructed to consider "all other factors that could have a bearing on the weight to which an opinion is entitled." *Id*.  For example, an ALJ may discount a medical opinion on the basis of internal inconsistency. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1074 (10th Cir. 2007) (concluding that the ALJ permissibly assigned low weight to a treating physician's opinion where the doctor's opinion that the claimant was "not doing well"  was "seemingly inconsistent" with his opinion that the

claimant had made progress since going back on his medication and moving in with his family).

Here, the ALJ gave Dr. Padilla's opinions regarding Plaintiff's mental limitations considerable weight when assessing her functioning with drug and alcohol abuse. *Id.* at 22, 27. In contrast, she gave "little weight" to his opinion regarding Plaintiff's projected functioning without drug and alcohol abuse, explaining that she found his opinion "internally inconsistent with other parts of his report." *Id.* at 26. The ALJ noted that Dr. Padilla identified substance abuse as an adverse factor in his medical source assessment of Plaintiff's work-related functions and opined that Plaintiff's memory complaints were likely explained by "her mood disorder *and frequent abuse of cannabis*." *Id.* (emphasis added). Additionally, she discussed Dr. Padilla's statement that the diagnosis of cognitive disorder was "uncertain" because it was unclear whether Plaintiff would obtain higher cognitive functioning scores after a period of sobriety. *Id.* The ALJ explained that these statements by Dr. Padilla's statements told her two things:

> First, that ongoing use of substances of abuse, such as [Plaintiff's] use at the time Dr. Padilla evaluated her, can adversely affect performance on psychometric testing. Second, there is no medically accepted diagnosis of dementia to establish it as an impairment nor is her medical history consistent with onset of dementia, or mental retardation (as Dr. Padilla also suggested may be the case).

*Id.* at 27. After comparing Dr. Padilla's opinion with the rest of the evidence of record, the ALJ found it was "more likely than not" that Plaintiff's poor performance in testing with Dr. Padilla was "due largely in part to her ongoing use of marijuana, alcohol, and / or cocaine." *Id.*

Plaintiff maintains that there was nothing inconsistent about Dr. Padilla's uncertainty as to whether Plaintiff might obtain higher cognitive functioning scores after

a period of sobriety and his opinion that sobriety would not improve her cognitive functioning to the level necessary to maintain employment. *Doc. 18* at 17.  Defendant counters, insisting that it was reasonable for the ALJ to discount this portion of Dr. Padilla's opinion as internally inconsistent.

Dr. Padilla expresses the following opinions relevant to Plaintiff's drug addiction and alcoholism: (1) that because a CT of Plaintiff's brain was normal, it appears that her memory problems are likely explained by her mood disorder and daily substance abuse (*AR* at 33); (2) that it is uncertain whether Plaintiff suffers from mental retardation or dementia as a result of decades of substance abuse or whether she would obtain higher scores in cognitive functioning after a period of sobriety (*id.* at 336); (3) that Plaintiff's history of drug abuse may account for her memory deficits and contribute to her extremely low Full Scale IQ (*id.* at 336); and (4) that Plaintiff's ability to work would not "improve significantly" with cessation of substance abuse (*id.* at 338).

In offering these opinions, Dr. Padilla identified Plaintiff's drug use as a significant factor in her poor cognitive functioning, suggesting that her poor cognitive functioning scores might subside after a period of sobriety. *AR* at 332-336. Yet he also concluded that Plaintiff's ability to work would not "significantly improve" with cessation of substance abuse "because of her extremely low Full Scale IQ, . . . her extremely low Working Memory Index . . . and her mood disorder." *Id.* at 338. In other words, the cognitive limitations that Dr. Padilla suggests would preclude Plaintiff from working even if she was sober are the very same cognitive limitations that he suggests may improve or resolve with sobriety. In the Court's view, the ALJ's characterization of Dr. Padilla's opinions as internally inconsistent is at least reasonable. As such, under the deferential

standard of review to which the ALJ is entitled, she fulfilled her obligation to provide legitimate reasons for rejecting Dr. Padilla's opinion which were sufficiently specific to enable the Court to meaningfully review her findings.

The ALJ's explanation that Dr. Padilla's opinion is inconsistent with other evidence in the record, particularly as to possible mental retardation and/or dementia, is equally reasonable.  In his report, Dr. Padilla explained that he listed Plaintiff's diagnosis of "cognitive disorder not otherwise specified" first on Axis I because he was uncertain whether she suffered from mental retardation or dementia as a result of decades of substance abuse or because of current substance abuse. *AR* at 336. In discounting Dr. Padilla's opinion as to Plaintiff's functioning absent drug or alcohol use, the ALJ notes that there is "no medically accepted diagnosis of dementia to establish it as an impairment, nor is her medical history consistent with onset of dementia or mental retardation (as Dr. Padilla also suggested may be the case)." *Id.* at 27. The ALJ goes on to explain that comparing Dr. Padilla's opinion with the rest of the evidence of record leads her to the conclusion that Plaintiff's poor performance in cognitive testing was a result of ongoing drug use. *Id.*

Having examined the evidence of record, and having found no other diagnosis or history consistent with dementia or mental retardation, the Court concludes that the ALJ's secondary reason for discounting this portion of Dr. Padilla's opinion is also sufficiently specific and legitimate. The Court will not reweigh this opinion or substitute its judgment for that of the ALJ.

As to Plaintiff's contention that the ALJ substituted her own conclusions for that of the medical expert, the Court notes that ALJs can, and indeed must, weigh the

medical opinions before them and resolve conflicting medical evidence. To the extent that the ALJ identified inconsistencies within Dr. Padilla's opinion and with the record as a whole, her treatment of Dr. Padilla's opinion was consistent with the law and supported by substantial evidence. The Court will not second-guess her decision to reject[3] this portion of to Dr. Padilla's opinion.  Even so, the Court reserves for further discussion herein the related issue of whether the rejection of Dr. Padilla's opinion ultimately left the ALJ's unfavorable disability determination unsupported by substantial evidence. *See infra* Part III.C.

### B.  Dr. Mercado's Opinion

Maryalyse Adams Mercado, M.D., Plaintiff's treating physician, began treating her in July 2009. *AR* at 374. On September 2011, she completed a mental impairment questionnaire, evaluating Plaintiff's impairments. *Id.* at 374-77. She diagnosed Plaintiff with Major Depression, Insomnia and Probable Bipolar Disorder. *Id.* at 374. She determined that Plaintiff's mental impairments caused various marked limitations with her ability to maintain attention and concentration, her ability to work in coordination with or in proximity to others without being distracted, and her ability to respond appropriately to changes in work settings. *Id.* at 375-76. She also found various moderate limitations. *Id.* She opined that Plaintiff's impairments would cause her to be absent from work more than three times per month and that Plaintiff was incapable of performing a full-time job on a regular and continuing basis. *Id.* at 376.

Plaintiff submits that the ALJ erred by "disputing the findings and diagnoses of treating physician Maryalyse Adams Mercado, M.D. and in doing so substituted her own

---

[3] The Tenth Circuit has reasoned that according a medical opinion "little weight" is "effectively rejecting" that opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012).

unqualified medical assessment for that of [Plaintiff's] treatment provider." *Doc. 18* at 18. As with Dr. Padilla, the ALJ gave Dr. Mercado's opinion "great weight" as to Plaintiff's functional abilities to the extent that the opinion reflected Plaintiff's abilities with ongoing substance abuse. *AR* at 27. She explained, however, that she gave this same opinion "little weight insofar as it appears to reflect functioning without such ongoing use." *Id.*

The ALJ reasoned that there was no evidence in Dr. Mercado's records suggesting any knowledge of Plaintiff's substance abuse or dependence. *Id.* Instead, according to the ALJ, Dr. Mercado's records indicate that she "was ignorant of [Plaintiff's] drug and alcohol use when she generated the progress notes and the answers to the mental impairment questionnaire." *Id.* Indeed, with few exceptions, the notations in the headings of Dr. Mercado's progress notes indicate that Plaintiff "never" used drugs and only "occasionally" consumed alcohol. *See id.* at 319-324, 367-377. The only written comment by Dr. Mercado relating specifically to Plaintiff's drug and alcohol use appears in her May 18, 2010 record, where she recorded that Plaintiff had not used cigarettes, alcohol (ETOH), or drugs "since [her] 20s." *Id.* at 323.

Plaintiff maintains that the ALJ erred by failing to re-contact Dr. Mercado in order to determine the degree to which Dr. Mercado believed Plaintiff's impairments stemmed from substance abuse. *Doc. 24* at 4-5. She contends that under *Anderson v. Astrue*, 319 F. App'x 712 (10th Cir. 2008), the inadequacy of evidence that the ALJ received from Dr. Mercado gave rise to a duty to recontact her. *See Doc. 24* at 5 (citing *Anderson*, 319 F. App'x at 728). The Commissioner insists that no duty to recontact Dr. Mercado arose in the absence of a finding that her records were inadequate.

In the Court's assessment, it was not error for the ALJ not to recontact Dr.
Mercado. First, she did not determine that Dr. Mercado's opinion was either confusing
or ambiguous, but instead she explained that she gave "great weight" to the opinion as
to Plaintiff's functional abilities, noting her understanding that the opinion necessarily
reflected only Plaintiff's abilities *with* ongoing substance abuse. Because the record as a
whole suggested recent substance use and dependence by Plaintiff,[4] the ALJ reasoned
that it was "highly likely that [Plaintiff] has not been forthright with her own treating
physician." *AR* at 27. The Court is satisfied that the evidence of recent drug and alcohol
use and dependence by Plaintiff, apparently unknown to Dr. Mercado, was a specific
and legitimate reason to give Dr. Mercado's opinion "little weight" in the context of
Plaintiff's functioning without drug and alcohol use.

Moreover, the ALJ was permitted but was not required to re-contact Dr. Mercado
to clarify her opinion. *See* 20 C.F.R. § § 404.1520b(c), 416.920b(c). An older version of
the regulations, in place at the time the Tenth Circuit decided *Anderson*, required ALJs
to re-contact medical sources if the evidence they provided was inadequate and the
"report . . . contains a conflict or ambiguity that must be resolved . . . [or] the report does
not contain all the necessary information." 77 Fed. Reg. 10,651 (Feb. 23, 2012). But
new regulations, effective March 26, 2012, rendered the ALJ's decision to re-contact

---

[4] For instance, on March 12, 2010, Plaintiff reported to Dr. Cristobel Rendall, an examining
psychiatrist at University of New Mexico Psychiatric Emergency Services, that she has used
marijuana and cocaine since she was 20, smokes marijuana all day to relax, snorts cocaine
when it is available, and drinks to excess when partying. *AR* at 287.  Additionally, on June 16,
2010, Plaintiff reported to examining Clinical Nurse Specialist Carol J. Capitano, Ph.D. that she
smokes approximately half an ounce of marijuana every day, that she most recently used
cocaine a "couple years ago," and that she drinks alcohol socially. *Id.* at 295. Finally, on October
18, 2010, Plaintiff reported to Dr. Padilla that she had been smoking marijuana almost daily for
the last decade, would occasionally use cocaine if it was available, and drinks occasionally to
excess. *Id.* at 333.

medical sources discretionary. *See* 20 C.F.R. § § 404.1520b(c), 416.920b(c) (2012). These new regulations provide that the ALJ may determine how to resolve inconsistencies or insufficiencies in the record and may take certain actions, including re-contacting a treating physician or medical source, requesting additional existing records, requiring the plaintiff to undergo a consultative examination, or requesting more information from the plaintiff or others. *See* 20 C.F.R. § § 404.1520b(c), 416.920b(c). In promulgating these new regulations, the Social Security Administration explained that the requirement to recontact medical sources had become "too rigid at a time when our adjudicators need more flexibility in developing evidence as quickly and efficiently as possible." *Id.* at 10,653.

Although the ALJ here opted not to re-contact Plaintiff's treating physician, Plaintiff was required to undergo a consultive examination with Dr. Padilla, who, as discussed above, offered an opinion as to Plaintiff's ability to work assuming sobriety. *See AR* at 338. The Court finds no clear legal error in the ALJ's reliance on a consultative examination in lieu of re-contacting Dr. Mercado. Nor was it error for the ALJ to give great weight to Dr. Mercado's opinion only insofar as it reflected Plaintiff's functional abilities *with* ongoing drug use.

However, while the Court is satisfied that the ALJ applied the correct legal standard in her treatment of the opinions of Dr. Mercado, a more difficult inquiry remains:  whether the ALJ's ultimate determination of nondisability was properly supported by substantial evidence, where neither Dr. Mercado nor Dr. Padilla's opinions supported her determination. The Court takes up this substantial evidence inquiry in the context of Plaintiff's final argument.

### C.  The ALJ's DAA Evaluation

Finally, Plaintiff argues that the ALJ erred by failing to resolve the difference between her two RFCs – the initial RFC with drug or alcohol addiction ("the DAA RFC") and the second RFC assuming no drug or alcohol addiction ("the non-DAA RFC"). *Doc. 18* at 20. Plaintiff submits that the ALJ's reasoning for her non-DAA RFC finding is "unclear and difficult to follow" and that she did not adequately explain why Plaintiff's ability to set her schedule would be affected by substance abuse but her ability to understand, remember and carry out simple job tasks would not be affected. *Doc. 18* at 21. Moreover, Plaintiff contends that the ALJ's non-DAA RFC is "wholly inconsistent" with the assessments by treating physician Dr. Mercado and consultative examining psychologist Dr. Padilla.  In other words, Plaintiff asserts that the ALJ's non-DAA RFC is not supported by substantial evidence.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled  . . . if alcoholism or drug addiction would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also* 20 C.F.R. § 416.935. The key factor in making this determination is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). According to 20 C.F.R. § 416.935(b)(2), the ALJ must first evaluate which of a claimant's limitations would remain if the claimant stopped using drugs or alcohol and, second, whether any or all of their remaining limitations would be disabling. *See id.* If the claimant's remaining limitations would not be disabling, his or her alcoholism or drug addiction is a contributing factor material to a disability determination and benefits will be denied. 20

C.F.R. § 416.935(b)(2)(i).  Conversely, if the claimant would still be considered disabled due to her remaining limitations, the claimant's alcoholism or drug addiction is not a contributing factor, and she is entitled to benefits. 20 C.F.R. § 416.935(b)(2)(ii).

Social Security Ruling 13-2p, which explains the Social Security Administration's "policies for how [it] consider[s] whether 'drug addiction and alcoholism' (DAA) is a contributing factor material to [its] determination of disability," became effective March 22, 2013, just over four months before the ALJ issued her decision in this case on July 25, 2013. *See* SSR 13-2p, 2013 WL 621536; *AR* at 28. The Ruling explains the considerations at issue in the "DAA evaluation process" in a series of six steps. *See* SSR 13-2p at *5.

At Step One of the DAA evaluation process, the adjudicator considers whether the claimant has DAA. *Id.* If the claimant does have DAA, the adjudicator determines, at Step Two, whether the claimant is disabled considering all impairments, including DAA. *Id.* At Step Three, if DAA is the only impairment, it is considered material and the application for benefits is denied. *Id.* If it is not the only impairment, the adjudicator considers, at Step Four, whether the other impairments are disabling by themselves while the claimant is dependent upon abusing drugs or alcohol. *Id.* If the impairments are disabling during drug or alcohol dependence, the ALJ determines, at Step Five, whether the DAA causes or affects the claimant's medically determinable impairments. *Id.* If the DAA does not cause or affect these impairments, it is not material and benefits are awarded. *Id.* If the DAA causes or affects the other impairments, the adjudicator considers, at Step Six, whether the other impairments would improve to the point of nondisability in the absence of the DAA. *Id.* If the impairments would so improve, the

DAA is material and benefits are denied. *Id.* On the other hand, if the impairments would not improve to the point of nondisability in the absence of DAA, DAA is not material and benefits are awarded. *Id.*

The ALJ did not reference SSR 13-02p; nor did she discuss the six steps enumerated therein. *See AR* at 17-28.  She did, however, determine a non-DAA RFC assuming cessation of drug and alcohol abuse and found that Plaintiff's "ongoing use of substances of abuse is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use." *Id.* at 28.  Although she did not directly discuss the extent to which Plaintiff's other impairments would improve to the point of nondisability in the absence of DAA, she explained that she found it "more likely than not that [Plaintiff's] poor performance in testing with Dr. Padilla was due largely in part to her ongoing use of marijuana, alcohol, and / or cocaine." *Id.* at 27. This suggests an understanding that Plaintiff's cognitive limitations would be at least partially alleviated through cessation of drug and alcohol use.

Comparing the ALJ's two RFCs, the first with DAA and the second assuming cessation of DAA, the only distinction is that the latter omits the limitation that Plaintiff set her work schedule on a day-to-day basis. *Compare AR* at 22 *with AR* at 25. The ALJ's non-DAA RFC retains the same limitation to "simple job tasks." *Compare AR* at 22 *with AR* at 25. But the ALJ offers no explanation as to why she omitted the work schedule limitation in the non-DAA RFC or as to why she retained the limitation to "simple job tasks," even though she found it likely that Plaintiff's poor test scores were due in part to her DAA. While Dr. Mercado's opinion may provide some support for a

requirement that Plaintiff be able to set her work schedule on a day-to-day basis, *AR* at 376 Dr. Mercado did not attribute this particular limitation to the effects of drug or alcohol use. Instead, her opinion appears to only take into account Plaintiff's mental impairments, including Major Depression, insomnia, and probable Bipolar Disorder, omitting altogether any mention of drug or alcohol use. *See id.* at 374-376.

The Commissioner suggests that the work schedule limitation was derived from Plaintiff's testimony at the February 22, 2012 hearing. *Doc. 23* at 14.  Plaintiff did testify that when previously employed she required a flexible work schedule and was able to maintain certain employment because her employer allowed her to "ma[k]e her own hours." *AR* at 38-41. Nevertheless, this explanation by the Commissioner is absent from the ALJ's rationale and constitutes an impermissible *post hoc* rationalization.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts must evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact).

Furthermore, the ALJ does not explore the extent to which Plaintiff's DAA may have caused or affected her other impairments, as required by Steps Five and Six of the DAA evaluation process. For instance, although Dr. Padilla's report at least raises the question of whether "decades of substance abuse" may have contributed to now-irreversible cognitive limitations, *see AR* at 336-38, the ALJ does not make any findings in this regard. Significantly, Plaintiff would be entitled to a favorable disability determination if the ALJ determined that her DAA caused or affected her other

impairments if those impairments were irreversible or would not improve to the point of non-disability in the absence of DAA.  *See* SSR 13-2p at *5.

SSR 13-2p instructs that ALJs must "provide sufficient information so that a subsequent reviewer considering all of the evidence in the case record can understand the reasons" that the ALJ found the claimant not disabled without drug and alcohol abuse. SSR 13-2p, at *14.  But, here, the ALJ's DAA materiality assessment amounts to a conclusory statement that Plaintiff's substance abuse is a contributing factor material to the determination of disability. *AR* at 28.  According to SSR 13-2p, "a single statement that DAA is or is not material to the determination of disability by an adjudicator is not sufficient." SSR 13-2p at *15. Simply put, the ALJ has failed to provide sufficient rationale for her finding that Plaintiff is not disabled absent drug and alcohol abuse, placing her decision beyond meaningful judicial review and leaving the Court to speculate as to which evidence led to her conclusion. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (reasoning that the ALJ's "bare conclusion" in which he merely stated a summary conclusion was "beyond meaningful judicial review").

The Court also considers the related issue of whether substantial evidence supports the ALJ's determination as to the materiality of Plaintiff's DAA. SSR 13-2p acknowledges that, like Plaintiff, "[m]any people with DAA have co-occurring mental disorders." *Id.* at *9. Even before SSR 13-2p became effective, this Court acknowledged that "mental disorders and substance abuse can be highly interrelated and that the difficult analysis should not be made superficially." *Williams v. Astrue*, 12cv0141 KBM, *Doc. 25*, at 7 (D.N.M. Oct. 24, 2012). Likewise, SSR 13-2p provides that the adjudicator "must have evidence in the case record that establishes that a claimant with a co-

occurring mental disorder(s) would not be disabled in the absence of DAA" in order to support a finding that DAA is material. *Id.* The Ruling explains that "[u]nlike cases involving physical impairments, [the Social Security Administration does] not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder." *Id.* Thus, the ALJ's finding that Plaintiff's DAA is not material to her disability finding must be supported by evidence establishing that Plaintiff's co-occurring mental disorders are not disabling in the absence of DAA.

In *Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006), the Tenth Circuit emphasized the need for "careful examination of periods of abstinence" from DAA in cases involving substance use and coexisting mental impairments. *Id.* at 623. Referencing a teletype issued by the Commissioner, the court identified periods of sobriety as "the most useful evidence that might be obtained" in such. *Id.* But, here, no documented period of sobriety exists in Plaintiff's medical evidence of record. Even the ALJ acknowledges as much. *See AR* at 26 (concluding that "[t]here is no apparent period of sobriety in the medical evidence of record"). Accordingly, the Court must look elsewhere for evidentiary support for the ALJ's DAA materiality finding.

As discussed herein, the ALJ explained that she gave "little weight" to both Dr. Padilla's opinion that Plaintiff's ability to work would not significantly improve if she stopped using drugs and alcohol and to Dr. Mercado's opinion "insofar as it appears to reflect functioning without [drug and alcohol abuse]." *Id.* Conversely, she gave "great weight" to the State agency consultative reviewers in the context of her DAA evaluation, reasoning that "[t]o the extent their opinions reflect [Plaintiff's] functioning within twelve months of abstinence from substances of abuse, I accord great weight to the State

agency's consultative psychiatrist and psychological reviewers' opinions that [Plaintiff] can perform simple job tasks." *Id.* (referncing the opinions of Elizabeth Chiang, *AR* at 340-42, and Renate Wewerka, *AR* at 362).  In short, the ALJ relied upon the opinions of Dr. Chiang and Dr. Wewerka to support both her non-DAA RFC and her finding that substances of abuse were a contributing factor material to the disability determination.

Curiously, though, neither Dr. Chiang nor Dr. Wewerka offered an explicit opinion as to Plaintiff's functional abilities in the absence of DAA.  While Dr. Chiang noted that Plaintiff "is using marijuana daily and cocaine and alcohol occasionally," she made no attempt to separate the effects of Plaintiff's substance abuse from her co-occurring mental impairments or to project which limitations would remain if she stopped using drugs or alcohol.  Rather, she opined that Dr. Padilla's narrative and Plaintiff's IQ scores and work history did not support the marked limitations that Dr. Padilla found and that Plaintiff, instead, had only moderate limitations. *AR* at 342. Dr. Chiang did not condition any of her opinions on Plaintiff's cessation of drug or alcohol use.

The ALJ implicitly rejected Dr. Chiang's opinions as to Plaintiff's limitations without substance abuse, favoring Dr. Padilla and Dr. Mercado's opinions, which she "great weight insofar as [they] reflect[ed] Claimant's functional abilities with ongoing use of her substances of abuse." *Id.* at 27.  Simply put, Dr. Chiang's opinions, which appear to be limited to Plaintiff's functional limitations *with* DAA, cannot constitute substantial evidence supporting the ALJ's disability determination *without* DAA.

Dr. Wewerka's opinion is even less helpful to the ALJ's findings.  Her opinion was as follows: "a review of prior medical records does not change the PRTF/MRFC dated 11/22/10 for unskilled work." *Id.* at 362. The November 22, 2010 decision to which Dr.

Wewerka refers was the State agency's initial unfavorable disability determination. *See id.* at 90-97.  Dr. Wewerka's opinion hardly constitutes substantial evidence in support of the ALJ's non-DAA RFC or her determination that drugs and alcohol were a contributing factor material to the disability finding.

Given the ALJ's rejection of Dr. Padilla's opinion and the State agency consultative reviewers' failure to offer any explicit opinion as to Plaintiff's limitations in the absence of substance use, the ALJ was left without any medical opinion on this critical issue.  *Salazar* is, once again, instructive in this situation.

The record evidence before the ALJ in *Salazar* included "anecdotal comments" from examining physicians that the claimant did "pretty well" and had a "fairly good" prognosis when she refrained from alcohol use. *Salazar*, 468 F.3d at 619-25. The Tenth Circuit explained that even these opinions did not "rise to the level of substantial evidence" to support the ALJ's determination that she was not disabled. *Id.* at 625. In reaching this conclusion, the court explained that if a medical or psychological examiner could not project which limitations would remain if the claimant stopped using drugs or alcohol, "the disability examiner should find that DAA is *not* a contributing factor material to the disability determination." *Id.* at 623 (emphasis in original).

If the medical opinions in *Salazar* did not rise to the level of substantial evidence to support the ALJ's finding, the ALJ's finding here fairs no better. Indeed, the record is devoid of any medical or psychological report, opinion, or projection as to Plaintiff's remaining limitations without DAA save Dr. Padilla's opinion that her ability to work would not "improve significantly" with sobriety, which the ALJ rejected.

The ALJ's conclusion that Plaintiff would not be disabled in the absence of DAA is not supported by substantial evidence and remand is warranted. *See Williams*, 12cv0141 KBM at 12 (holding that the ALJ's DAA disability determination was not supported by substantial evidence where neither the agency physician nor the claimant's treating physicians discussed the claimant's projected limitations if he stopped using drugs and alcohol). On remand, the ALJ should following the steps enumerated in SSR 13-2p and should carefully explain the rationale for her determination as to the materiality of Plaintiff's DAA, which must be supported by substantial evidence. The ALJ should also ensure that the record is fully developed and may wish to require additional consultative evaluations, particularly as to any projected improvement of Plaintiff's co-occurring mental disorders in the absence of DAA.

## IV.    Conclusion

The Court finds that Plaintiff's motion to remand is well-taken and that this matter should be remanded for a reevaluation of the extent to which Plaintiff's drug addiction and alcoholism ("DAA") is a contributing factor material to the determination of disability, as set forth above.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 15)* is **granted**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE